## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELLA AYISSI, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-4201 |
| | § | |
| KROGER TEXAS LP, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This employment case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 30] filed by Defendant Kroger Texas LP ("Kroger").[1] Plaintiff Angella Ayissi filed a Response [Doc. # 40] and Kroger filed a Reply [Doc. # 45]. Having reviewed the full record and applied governing legal authorities, the Court **grants** the Motion as to the retaliation claim. The Court **grants in part and denies in part** the Motion as to the harassment claim.

## I.   BACKGROUND

Plaintiff began working for Kroger as a cashier in May 1995 at Store No. 387. When that store closed in 2005, Plaintiff transferred to Store No. 320.

---

[1]   Plaintiff named Kroger Co., LLP, Kroger Store No. 320, and The Kroger Co. as Defendants in the Second Amended Complaint [Doc. # 17]. None of these three Defendants was served by the May 16, 2011 deadline and, as a result, they are DISMISSED pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

Store No. 320 employs mentally challenged individuals through Texana Behavioral Healthcare and Developmental Disabilities Services ("Texana").  One of the Texana employees at Store No. 320 was Peter Caciedo.

Plaintiff claims that, either on February 17, 2009 or throughout her employment at Store No. 320, Caciedo called her a "fucking bitch" when she asked him to retrieve grocery carts.  Plaintiff reported the incident to the store manager on duty, Raymond Wei, who immediately reprimanded Caciedo for his behavior.  Kroger conducted a full investigation and, a few days later, suspended Caciedo for seven (7) days and placed him on probation for six (6) months.  Plaintiff reported the conduct to the Union, which filed a grievance on her behalf.  The Union concluded that the corrective action already undertaken was appropriate and closed its file on the incident.

Plaintiff later complained to Kroger management that Caciedo followed her after work in March 5, 2009.  Originally, Plaintiff claimed that she checked to make sure Caciedo was still in the store when she left and that she was surprised later when she passed him going in the opposite direction.  Later, in her deposition, Plaintiff testified that Caciedo was waiting in the parking lot on a scooter when she left work and that he followed her from the parking lot, down the street to a credit union where he remained while she went inside to conduct business, from the credit union parking

lot to a nearby Target store parking lot, then down the street until she "lost him" at a busy intersection.  Plaintiff reported the original version to Kroger management and to the police.  Kroger allowed Plaintiff to meet with the investigating police officer during the work day.  Caciedo was placed on a 30-day leave of absence from March 5, 2009 until April 5, 2009.

Plaintiff complained that, after Caciedo returned from the leave of absence, he followed her around the store.  On April 9, 2009, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), describing the derogatory remark by Caciedo on February 17, 2009.  Plaintiff states that the conduct has "created a hostile work environment."  *See* EEOC Charge, Exh. C to Motion.

In November 2009, Caciedo was transferred to a different Kroger store.  When he later came to Store No. 320 to shop with someone from his home, Plaintiff complained and the companion was asked to leave with Caciedo.[2]

During the years she worked with Caciedo, Plaintiff did not miss work because of any alleged harassment.  After Caciedo was transferred, Plaintiff took a leave of

---

[2]     It is unclear from the record whether the companion was a family member or someone who worked for Caciedo's family.

absence for "stress" between November 17, 2009 and January 5, 2010.  Plaintiff took another leave of absence for "stress" beginning September 21, 2011.

Plaintiff alleges that she was subjected to a hostile work environment based on her sex and her race (African-American).  Plaintiff alleges also that she was retaliated against for engaging in protected activity under Title VII when her work schedule changed and when customers with more than the maximum number of items were directed to her express lane.  Plaintiff alleges that, as a result, she suffers from "post-traumatic stress disorder, and has suffered panic attacks which include fears for her life, anxiety, dizziness, rapid breathing and chest pains."  *See* Response, p. 11. Plaintiff alleges also that she suffered "an emotional breakdown forcing her to take leave from work."  *Id.* at  12.

After an extended time to complete discovery, Defendant filed its Motion for Summary Judgment.  The Motion is ripe for decision.

## II.   <u>STANDARD FOR MOTION FOR SUMMARY JUDGMENT</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th

Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v.*

*ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should

be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex*

*Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir.

2008).

For summary judgment, the initial burden falls on the movant to identify areas

essential to the non-movant's claim in which there is an "absence of a genuine issue

of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

The moving party, however, need not negate the elements of the non-movant's case.

*See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving

party may meet its burden by pointing out "'the absence of evidence supporting the

nonmoving party's case.'"  *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th

Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.

1992)).

If the moving party meets its initial burden, the non-movant must go beyond the

pleadings and designate specific facts showing that there is a genuine issue of material

fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001)

(internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.   HARASSMENT CLAIM

Plaintiff alleges that Caciedo's conduct created a sexually and racially hostile work environment.  Under Title VII, it is an unlawful employment practice for an employer to discriminate against any individual because of the employee's race or sex. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 440 (5th Cir. 2011) (citing 42 U.S.C. § 2000e–2(a)(1)).  An unlawful employment practice under Title VII's prohibition against discrimination includes "requiring people to work in a discriminatorily hostile or abusive environment."  *See id.* (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).  For conduct to be actionable as a hostile work environment, it needs to be sufficiently "severe or pervasive."  *Id.* (citing *Harvill v. Westward Comms., LLC,* 433 F.3d 428, 434–35 (5th Cir. 2005)).  To avoid summary judgment on her hostile work environment claim, Plaintiff must present evidence that (1) she is a member of a protected class; (2) she was subject to unwelcome harassment on the basis of her race and/or sex; (3) the harassment affected a term or condition of her employment; and (4) that Kroger knew or should have known about the harassment and failed to take prompt remedial action.  *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 347 (5th Cir. 2007).  It is undisputed that Plaintiff is an African-American female.

### A.   Unwelcome Harassment on the Basis of Sex and Race

It is undisputed that Plaintiff was subjected to unwelcome harassment by Caciedo.  It is less clear whether Plaintiff has presented evidence that the harassment was based on her race or sex.   It is undisputed that Plaintiff complained to management in February 2009 that Caciedo called her a "fucking bitch."  Plaintiff testified in her deposition and stated in her Affidavit that Caciedo asked her to come over to his house for a massage.  Plaintiff also presented evidence that Caciedo frequently used the term "nigger" in communications with her, other employees, and customers.  This evidence, while slim, is sufficient to create a genuine issue of material fact regarding whether the conduct by Caciedo – a mentally challenged individual – was directed toward Plaintiff because of her sex and race.

**B.**     **Severe or Pervasive Harassment**

The third element is that the harassment affected a term or condition of Plaintiff's employment.   To satisfy this element, Plaintiff must show that the challenged conduct was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir. 2012).  Evaluating whether harassment is sufficiently severe or pervasive to satisfy this element requires consideration of "all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 188-89.

Plaintiff stated in the Second Amended Complaint that Caciedo called her offensive names, but she did not provide any time frame for the allegation. In her deposition, Plaintiff testified that Caciedo made offensive remarks to her on "several" occasions, but she could not remember any specific dates. *See* Ayissi Depo., p. 69. In her Affidavit, however, Plaintiff's memory is inexplicably much improved, and she recalls sufficiently to state under oath and "under penalty of the perjury law of the United States" that Caciedo called her offensive names, cursed her, harassed her, and stalked her "multiple times a day" and that the conduct was a "consistent problem beginning in 2004."[3]  *See* Ayissi Affidavit, ¶ 1.  Plaintiff testified in her deposition that "there was one time when [Caciedo] asked me to come over to his house, if I wanted a massage. He would ask me that." Plaintiff could not, however, recall when that comment was made. *See* Ayissi Depo., pp. 69-70.  Plaintiff stated under oath in her Affidavit, however, that Caciedo "on a daily basis" would ask to give her a massage. *See id.*, ¶ 2.  The sworn statements in Plaintiff's Affidavit significantly expand, but do not directly contradict, Plaintiff's extremely vague and often non-

---

[3]   Notwithstanding her sworn testimony in her Affidavit that Caciedo's remarks were a problem beginning in 2004, it is undisputed that Plaintiff did not transfer to Store No. 320 and begin working with Caciedo until "'05 to '06." *See* Ayissi Depo., p. 23.

responsive deposition testimony. While these circumstances are extremely suspicious, it is not this Court's function on a motion for summary judgment to gauge credibility of a witness's testimony. The statements in the Affidavit are sufficient to raise a genuine issue of material fact on the issue of "severe and pervasive" conduct in connection with the offensive remarks.

Although not mentioned in the Second Amended Complaint, Plaintiff testified in her deposition that Caciedo, after returning from the thirty-day leave of absence on April 5, 2009, and prior to being transferred to a different store in November 2009, would follow her around the store. *See* Ayissi Depo., p. 151. Plaintiff later explained that Caciedo would "try to come my way." *See id.* at 153. Plaintiff admitted that she and Caciedo were both assigned to work in the same area of the store and both had a legitimate reason to be in that area. *See id.* at 157. Plaintiff also stated that co-workers did not let Caciedo come near her. *See id.* 158. The Court concludes that Caciedo's "trying" unsuccessfully to approach Plaintiff in an area of the store where both were assigned to work is not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. Kroger is entitled to summary judgment on this allegation.

## C.   **Prompt Remedial Action**

The final element of her hostile work environment claim is that Kroger knew or should have known about the harassment and failed to take prompt remedial action. "An employer can escape liability if it takes remedial action calculated to end co-worker harassment as soon as it knows or should know of the harassment." *Cherry*, 668 F.3d at 189 (citing *Sharp v. City of Houston,* 164 F.3d 923, 929 (5th Cir. 1999)).

It is uncontested that immediately after Plaintiff made a formal complaint about Caciedo calling her an offensive name in February 2009, Kroger took prompt remedial action. Kroger management immediately investigated the incident, suspended Caciedo for seven (7) days, and placed him on probation. *See* Constructive Advice Report, Exh. D-3 to Motion. The Union agreed that Kroger's actions were appropriate and closed the file on Plaintiff's grievance. Indeed, the Union was satisfied notwithstanding its mistaken belief that the suspension was for only five (5) days. *See* Union Letter, Exh. D-4 to Motion. Additionally, Plaintiff testified in her deposition that Kroger's disciplinary action against Caciedo was appropriate. *See* Ayissi Depo., pp. 65-66. The Court agrees and concludes that there is no genuine issue of material fact that Kroger took prompt remedial action in connection with the February 2009 complaint.

Plaintiff maintains, however, that her complaints about Caciedo began years before the February 2009 incident and that Kroger failed to take prompt remedial

action during that time period.  In her EEOC Charge, Plaintiff stated that Caciedo's offensive comments to her had been "an on-going problem over the last few years." *See* EEOC Charge, Exh. C to Motion.  This evidence raises a genuine issue of material fact regarding whether Kroger took prompt remedial action in response to Plaintiff's complaints about Caciedo prior to February 2009.

Plaintiff complains also about an alleged "stalking" incident in March 2009. Plaintiff has described the alleged incident in widely inconsistent terms.  Originally, Plaintiff reported that Caciedo passed her on a public road at a time she thought he was still in the Kroger store.  In her deposition, however, she stated under oath that Caciedo followed her from the Kroger parking lot to a credit union, then to a Target parking lot, and then along a public road until Plaintiff "lost" him at a busy intersection.  It is undisputed, however, that Plaintiff reported the alleged "stalking" to Kroger management and that Kroger placed Caciedo on a leave of absence for thirty (30) days.  It is undisputed that Kroger allowed Plaintiff, during her work hours, to meet with Caciedo's job coach from Texana and to report the incident to law enforcement.  Kroger transferred Caciedo to a different store.  When he came into the store thereafter, Kroger asked him to leave.  This undisputed evidence establishes that Kroger took prompt remedial action in response to the alleged "stalking" incident and is not subject to Title VII liability based on that situation.

Plaintiff has presented evidence to raise a genuine issue of material fact regarding whether Caciedo's offensive remarks to her created a hostile work environment based on her sex and race. Plaintiff's evidence also raises a genuine fact dispute regarding whether Kroger took prompt remedial action in response to Plaintiff's complaints about Caciedo's offensive remarks made before February 2009. As a result, Defendant's Motion for Summary Judgment on the pre-February 2009 offensive remarks aspect of the hostile work environment claim is **denied**.

## IV.   RETALIATION CLAIM

A plaintiff establishes a *prima facie* case of retaliation under Title VII by showing (i) she engaged in protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal connection between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)). It is undisputed that Plaintiff engaged in protected activity by complaining to Kroger management about Caciedo's conduct and by filing an EEOC Charge.

In her Second Amended Complaint, Plaintiff alleges that she was retaliated against when her work schedule changed and when telephone calls for her at work were "directed to a  non-management employee or Floor Supervisor for screening before being transferred to the Plaintiff." *See* Second Amended Complaint [Doc.

# 17], ¶¶ 30-31.  Plaintiff has presented no evidence regarding the telephone calls issue and summary judgment in favor of Defendant on that allegation is granted.

In her Affidavit filed in response to the Motion for Summary Judgment, Plaintiff added the allegation that she was retaliated against when customers with more than the maximum number of items were directed to her express lane.  *See* Ayissi Affidavit, Exh. B to Response, ¶ 7.  Plaintiff made no attempt in the Response, however, to present evidence or argument that a causal connection exists between the newly-asserted express lane issue and her protected activity.  Defendant is entitled to summary judgment on this allegation.

Plaintiff's remaining allegation in connection with the retaliation claim is that her schedule changed.  Plaintiff alleged no specific retaliatory conduct in the EEOC Charge, although she marked the "Retaliation" box on the form and stated summarily that she believed she had been "retaliated against in violation of Title VII . . .."  *See* EEOC Charge, Exh. C to Motion.  In her deposition testimony, Plaintiff alleged that she was retaliated against when she was required to work on Saturdays.  *See* Ayissi Depo., Exh. A to Motion, pp. 319-323.  She could not, however, remember any specific Saturday that she was scheduled to work.  When confronted with the business records of her work schedule from February 2, 2009, through July 19, 2011, which show that Plaintiff did not work any Saturdays during that period, Plaintiff testified

in her deposition on December 12, 2011, that the Saturday work did not begin until 2011 – apparently after July 19, 2011.  Plaintiff in her affidavit changed the alleged retaliatory schedule change from having to work on Saturdays to not being scheduled to work on Fridays.  Her work schedule reflects, however, that she was scheduled to work on Fridays in 2009 in April, May, June, July, September, and October, but none in November and December 2009 when she was on a leave of absence for "stress."  *See* Work Schedule Report, Exh. D-9 to Motion.  In 2010, Plaintiff was scheduled to work on Fridays in February, March, May, June, July, August, September, October, November, and December.  In 2011, Plaintiff was scheduled to work on Fridays in January, February, March, April, May, and June.  *See id.*  The work schedule records end on July 19, 2011.  *See id.*

In her deposition, Plaintiff testified in a vague way about having to "work later."  *See* Ayissi Depo. at 322.  The work schedule records reflect that prior to April 9, 2009, Plaintiff would generally end her work day between 3:00-4:00 p.m.  *See* Work Schedule Report, Exh. D-9 to Motion.  That remained Plaintiff's schedule until June 2009, when she was often scheduled to work until 4:30-5:00 p.m.  *See id.*  On no work day until July 18, 2011, was Plaintiff scheduled to work later than 5:30 p.m.  *See id.*

To satisfy the adverse employment action element of a retaliation claim, the plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted); *Hernandez*, 670 F.3d at 657 (citing *Aryain v. Wal–Mart Stores Tex. LP,* 534 F.3d 473, 484 (5th Cir. 2008)). The adverse action must be "material" because it is "important to separate significant from trivial harms." *Burlington*, 548 U.S. at 68. The standard is that of a "reasonable" employee. *Id.*

Being scheduled to work approximately one hour later in the work day is not an employment action that a reasonable employee would consider materially adverse. It is undisputed that Plaintiff was not demoted and experienced no change to her scheduled number of hours, her pay, or her benefits. *See, e.g., Anthony v. Donahoe*, 2012 WL 470193, *4 (5th Cir. Feb. 13, 2012). Plaintiff testified during her deposition that the "problem with [having to work later] is, Peter in on this parking lot. That's my thing. So I'm working later." *See id.* In her Affidavit, however, she changes the "problem" to being a single parent who needs to be home in the early evening. As noted previously, however, Plaintiff's schedule had her working no later than 5:30 p.m. until July 18, 2011, and only later than 5:00 p.m. on a few occasions. Plaintiff's

only other complaint about her work schedule is that she had enough seniority to work the best schedule.  A reasonable employee would not consider such a minor schedule change to be materially adverse.  Kroger is entitled to summary judgment on the retaliation claim.

## V.    **CONCLUSION AND ORDER**

Based on the foregoing, the Court concludes that Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of her retaliation claim. Specifically, Plaintiff has failed to show that she suffered a materially adverse employment action.

Plaintiff's affidavit, which extensively expands her deposition testimony, raises a genuine issue of material fact in connection with the harassment claim as to Caciedo's offensive remarks prior to February 2009.  Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 30] is **GRANTED** as to the retaliation claim.  It is further

**ORDERED** that the Motion for Summary Judgment [Doc. # 30] is **DENIED** as to the harassment claim to the extent it involves offensive remarks by Caciedo before February 2009 and **GRANTED** in all other respects.  The case remains scheduled for docket call on **July 30, 2012**.  It is further

**ORDERED** that Plaintiff's claims against Defendants Kroger Co., LLP, Kroger Store No. 320, and The Kroger Co. are **DISMISSED** in accordance with Rule 4(m) of the Federal Rules of Civil Procedure.

SIGNED at Houston, Texas, this **29th** day of **May, 2012**.

Nancy F. Atlas
United States District Judge